**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MATEO UTUY TIQUIRAM, BULMARO MIGUEL HERNANDEZ, and ENRIQUE CARLOS VIVEROS, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**KANONI, INC. d/b/a ARCH DINER, DIMITRIOS KALOIDIS, and JOHN DOES #1-4, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Mateo Utuy Tiquiram, Bulmaro Miguel Hernandez and Enrique Carlos Viveros (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are current and former dishwashers, bussers, line cooks and servers at Defendants' diner located in Brooklyn, New York.  For their work, throughout the relevant time period, Plaintiffs were not paid minimum wages for all hours worked and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, for failure to provide proper wage notices and wage statements and for uniform violations pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to

the claims occurred in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.     Plaintiff Mateo Utuy Tiquiram ("Utuy") was, at all relevant times, an adult individual residing in Kings County, New York.

8.     Plaintiff Bulmaro Miguel Hernandez ("Hernandez") was, at all relevant times, an adult individual residing in Kings County, New York.

9.     Plaintiff Enrique Carlos Viveros ("Carlos") was, at all relevant times, an adult individual residing in Kings County, New York.

10.    Throughout the relevant time period, Plaintiffs performed work for Defendants at "Arch Diner," located at 1866 Ralph Avenue, Brooklyn, New York 11234.

11.    Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

12.    Kanoni, Inc. is an active New York Corporation doing business as "Arch Diner" ("Arch Diner" or the "Corporate Defendant") with its principal place of business at 1866 Ralph Avenue, Brooklyn, New York 11234.

13.    Defendant Dimitrios Kaloidis ("Kaloidis") is an owner and operator of the Corporate Defendant.

14.    Upon information and belief, Defendants John Does #1-4 (collectively with

Kaloidis, the "Individual Defendants" and, collectively with the Corporate Defendant, the "Defendants") represent the other individuals who, in conjunction with Kaloidis, are owners, officers and/or operators of the Corporate Defendant.

15.    The Individual Defendants maintained operational control over the Corporate Defendant and jointly managed the Arch Diner by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

16.    The Individual Defendants jointly employed Plaintiffs, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

17.    The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

18.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

19.    At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

20.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since July 13, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Arch Diner (the "Collective Action Members").

22.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

23.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

24.     Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since July 13, 2012
> and through the entry of judgment in this case (the "Class Period")
> who worked as non-management employees at Arch Diner (the
> "Class Members").

25.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

26.     The Class Members are so numerous that joinder of all members is impracticable.

27.     Upon information and belief, there are well in excess of forty (40) Class Members.

28.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.     whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.     whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.     whether the Defendants automatically deducted from Plaintiffs and Class Members' hours worked for a lunch break, regardless of whether or not a lunch break was taken;

e.     whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours

6

per workweek;

f.    whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

g.    whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

h.    whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.    whether Defendants failed to reimburse Plaintiffs and the Class Members for the cost of their uniform;

j.    whether Defendants failed to pay Plaintiffs and the Class Members uniform maintenance pay;

k.    whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

l.    whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

29.    Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, are restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over

forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift and/or split shift of ten (10) or more hours, did not receive uniform maintenance pay, did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

30.     <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

31.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

32.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

33.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

34.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Arch Diner

35.     Upon information and belief, throughout the relevant time period, Arch Diner has been open 24 hours a day, 7 days a week.

36.     Upon information and belief, the Individual Defendant has owned and operated the Arch Diner through the Corporate Defendant since in or around 1994.

37.     Kanoni, Inc. was registered with the New York State Department of State, Division of Corporations on August 8, 1994.

38.     In the corporate filings with the New York State Department of State, Division of Corporations, Defendant Kaloidis is listed as the Chief Executive Officer and Registered Agent for Kanoni, Inc.

39.     Upon information and belief, Defendant Kaloidis regularly visits the Arch Diner to check in on his managers and the operations of the restaurant and takes an active role in ensuring that the restaurant is run in accordance with his procedures and policies.

40.     Upon information and belief, at all times relevant, Defendant Kaloidis, in conjunction with the other Individual Defendants, has had power over payroll and personnel decisions at Arch Diner, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

41.     Upon information and belief, Defendant Kaloidis, through his agents and employees, operates and manages Arch Diner with the same or substantially similar employment practices and policies as the others diners which he owns and operates.

9

**Plaintiffs' Work for Defendants**

42.    **Plaintiff Utuy** was employed by Defendants as a dishwasher and line cook at Arch Diner from in or around August 2011 through June 30, 2018 (the "Utuy Employment Period").

43.    Throughout the Utuy Employment Period, Plaintiff Utuy was typically scheduled to work six (6) days per week, with most Tuesdays off. Although his schedule varied throughout his employment, at the beginning of his employment from in or around August 2011 to in or around March 2013, when Plaintiff Utuy worked for Defendants solely as a dishwasher, Utuy typically worked the overnight shift six (6) days per week, from approximately 6:00 pm to approximately 6:00 am, for a total of seventy-two (72) hours per week. Thereafter, when Utuy worked as a line cook, his schedule up until the end of 2017 was as follows: Mondays from approximately 8:00 pm to approximately 6:00 am; Wednesdays and Thursdays from approximately 5:00 pm to approximately 2:00 am; Fridays and Saturdays from approximately 5:00 pm to approximately 6:00 am; and Sundays from approximately 5:00 pm to approximately 2:00 am, for a total of sixty-three (63) hours per week, and sometimes more. Beginning in or around January 2018, Utuy worked the following schedule: Mondays from approximately 8:00 pm until approximately 6:00 am; Tuesdays off; Wednesdays, Thursdays and Sundays from approximately 6:00 pm to approximately 1:00 am; and Fridays and Saturdays from approximately 6:00 pm to approximately 6:00 am, for a total of approximately fifty-eight (58) hours per week, and sometimes more.

44.    For his work, throughout the Utuy Employment Period, Utuy was paid a fixed weekly salary, which did not fluctuate based on the hours that he worked.  Specifically, during the relevant time period, Utuy was paid four hundred dollars ($400.00) per week from July 2012 until approximately January 2013, and then four hundred and twenty dollars ($420.00) per week

thereafter. When Utuy began working two (2) days as a line cook and four (4) days as a dishwasher, he was paid four hundred and eighty dollars ($480.00) per week. Thereafter, when Utuy began working exclusively as a line cook, he was paid five hundred dollars ($500.00) per week. Utuy received periodic raises of approximately thirty to forty-five dollars ($30-$45) per week throughout his employment until reaching his final weekly salary amount of seven hundred and thirty dollars ($730.00) per week at the end of 2017 through the end of the Utuy Employment Period.

45.     As such, throughout the Utuy Employment Period, Plaintiff Utuy has not been paid the legally-required minimum wages for all hours worked and has not been paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

46.     Throughout his employment period, each Monday Plaintiff Utuy received from the manager in charge, an envelope containing his weekly payments in cash without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate.  From in or around the beginning of 2017 through the end of his employment period, Plaintiff Utuy was required to sign a notebook which contains certain payment information, in order to collect his wages each week.

47.     **Plaintiff Hernandez** has been working for Defendants as a dishwasher, busser, and server at Arch Diner intermittently, from in or around 2000 to in or around 2013, and consistently, from in or around November 2013 to the present (the "Hernandez Employment Period").

48.     Throughout the Hernandez Employment Period, Plaintiff Hernandez was typically scheduled to work six (6) days per week, with most Mondays off.  Plaintiff Hernandez typically

11

worked the overnight shift schedule, as follows:  Tuesdays and Wednesdays, from approximately 9:00 pm to approximately 6:00 am; and Thursdays, Fridays, Saturdays, and Sundays, from approximately 7:00 pm to approximately 6:00 am, for a total of approximately sixty-two (62) hours per week.

49.    For his work, from in or around 2012 to in or around 2016, Plaintiff Hernandez was paid one dollar and fifty cents ($1.50) per hour, for all the hours worked in a given workweek, including those beyond forty (40), plus tips.  From in or around January 2017 to in or around December 2017, Plaintiff Hernandez was paid seven dollars and fifty cents ($7.50) per hour, for all hours worked in a given workweek, including those beyond forty (40), plus tips.  From in or around January 2018 to the present, Plaintiff Hernandez has been paid eight dollars and sixty-five cents ($8.65) per hour, plus tips, but Defendants only paid for up to forty (40) hours per week, regardless the total number of hours worked in a given workweek, such that he received no compensation other than tips for hours worked over 40 each week.

50.    As such, for most of the Hernandez Employment Period, Plaintiff Hernandez has not been paid the legally-required minimum wages for all hours worked and has not been paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

51.    Throughout his employment period, Plaintiff Hernandez has been receiving from the manager in charge, an envelope containing his weekly payments in cash without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate.

52.    Throughout the Hernandez Employment Period, Plaintiff Hernandez has been

required to use a uniform to perform his job at Defendants' Diner.  During the summer time, Plaintiff Hernandez is required to use a t-shirt with the logo of the Diner, that he needs to buy from defendants at the price of twelve dollars ($12.00) per shirt.  Plaintiff Hernandez never received a reimbursement for that uniform expense.

53.    **Plaintiff Carlos** has been working for Defendants as a dishwasher, food prep, and line cook at Arch Diner from in or around 2009 to the present (the "Carlos Employment Period").

54.    Throughout the Carlos Employment Period, Plaintiff Carlos has typically been scheduled to work six (6) days per week, with most Mondays or Tuesdays off. Although his schedule varied throughout his employment, during the relevant time period from in or around 2012 to in or around March 2018, Plaintiff Carlos typically worked the overnight shift six (6) days per week, Tuesdays to Sundays, from approximately 8:00 pm to approximately 6:00 am, for a total of approximately sixty (60) hours per week.  From in or around March 2018 to the present, Plaintiff Carlos has being working with the following schedule: Mondays from approximately 9:00 pm to approximately 6:00 am; Tuesdays off; Wednesdays from approximately 9:00 pm to approximately 6:00 am; Thursdays from approximately 10:00 pm to approximately 6:00 am; Fridays, Saturdays, and Sundays, from approximately 9:00 pm to approximately 6:00 am, for a total of approximately fifty-three (53) hours and sometimes more, when he needs to continue working beyond his scheduled shift to wait for the morning cook to start his shift.

55.    For his work, Carlos was paid on an hourly basis at different hourly rates from the beginning of the Carlos Employment Period up to January 2018, when Defendants changed his payment structure to a fixed weekly salary.  During the relevant time period, from in or around 2010 to in or around 2012, Plaintiff Carlos was paid seven dollars ($7.00) per hour.  From in or

13

around 2012 to in or around 2013, Plaintiff Carlos was paid eight dollars ($8.00) per hour. From in or around 2013 to in or around December 2017, Plaintiff Carlos was paid nine dollars ($9.00) per hour. Throughout this time period until the end of 2017, Carlos was paid the same rate for all hours worked, even those beyond forty (40) n a given workweek. If, during the time period between 2009 through December 2017, Plaintiff Carlos worked beyond the sixty (60) hours for which he was typically scheduled to work each week, Defendants did not compensate him at all for such hours worked beyond sixty (60) in a given workweek.

56.     From in or around January 2018 to the present, Plaintiff Carlos has been paid the purported salary of seven hundred and thirty dollars ($730.00) per week, for all hours worked, including those beyond forty (40) in a given workweek.

57.     As such, during the majority of the Carlos Employment Period, Plaintiff Carlos has not been paid the legally-required minimum wages for all hours worked and has never been paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

58.     Throughout the Carlos Employment Period, Plaintiff Carlos has been receiving from the manager in charge, an envelope containing his weekly payments in cash without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate.

59.     In addition, Defendants would automatically deduct one (1) hour as a lunch break for each day that Plaintiffs and Class Members worked, notwithstanding the fact that Plaintiffs and Class Members frequently were unable to take an uninterrupted lunch break and only certain back-of-the-house employees would at times be permitted to take a full hour. Consequently, through

14

Defendants' automatic adjustments and deductions to their employees' time worked, Defendants failed to credit Plaintiffs and Class Members for all hours worked each week.

60.     During their respective employment periods, although Plaintiffs have typically worked a spread of more than ten (10) hours per day or split shifts, they have not received spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days.

61.     Throughout their respective employment periods, Plaintiffs have not been provided with wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments each week.

**Defendants' Unlawful Corporate Policies**

62.     Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, spread-of-hours and failing to reimburse for uniform expenses.

63.     Plaintiffs have spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

64.     Plaintiffs have spoken with other employees of Defendants who were similarly paid on a purported "salary" basis or an hourly rate, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applies to non-management employees throughout the Class Period.

15

65.    Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which Plaintiffs have worked a spread of more than ten (10) hours or a split shift has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

66.    Defendants have required Plaintiff Hernandez and certain Class Members to purchase uniforms for which Defendants have not reimbursed the cost.

67.    Defendants' policies of paying certain employees on a "salary" basis rather than an hourly basis after January 1, 2011, violated 12 N.Y.C.R.R. § 146-2.5.

68.    Defendants have not provided Plaintiffs or Class Members with wage notices at the time of hire or by February 1 of each year.

69.    Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.

70.    Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage statements and wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments on a weekly basis.

71.    Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

16

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

72.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

74.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

75.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  By failing to pay Plaintiffs and the Collective Action Members the tipped minimum wage for all hours worked, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage.  Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

76.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

78.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

79.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

80.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

18

81.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

82.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNPAID OVERTIME</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

83.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

85.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

86.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

88.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

89.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class

Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

91.    Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

92.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone

number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

94.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## EIGHTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNIFORM VIOLATIONS
### (Brought on Behalf of Plaintiffs and the Class Members)

95.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.     Defendants willfully violated the rights of the Plaintiffs and the Class Members by failing to reimburse them for the purchase of their required uniforms, , in violation of the NYLL §§ 650, *et seq*., and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.8 (2009), 146-1.7 & 1.8 (2011).

97.     Defendants' uniform violations caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants the amount that Defendants failed to reimburse Plaintiffs and Class Members for the

purchase of their uniforms and the amount that they failed to pay Plaintiffs and Class Members for the maintenance of such uniforms, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL § 663(I) *et al.*

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

    a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

    b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

    c.    An order tolling the statute of limitations;

    d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

    e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as

provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.      An award of damages arising out of the improper unpaid uniform expenses and unpaid uniform maintenance costs under the NYLL;

j.      Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

k.      Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

l.      An award of prejudgment and post-judgment interest;

24

m.   An award of costs and expenses of this action together with reasonable attorneys'
and expert fees; and

n.   Such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial
by jury on all questions of fact raised by the complaint.

Dated: New York, New York
July 13, 2018

PELTON GRAHAM LLC

By: _____

Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

25

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Kanoni, Inc. d/b/a Arch Diner, Dimitrios Kaloidis y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

Mateo utuy tiquizam
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Kanoni, Inc. d/b/a Arch Diner, Dimitrios Kaloidis y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


y   _____          _____
         Firma                              Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Kanoni, Inc. d/b/a Arch Diner, Dimitrios Kaloidis y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_Enrique Carlos VpVeros_
Nombre Escrito